**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| JEFFREY WEBB, Petitioner, | CIVIL ACTION NO. 9:15-1720-JMC-BM |
| v. | **REPORT AND RECOMMENDATION** |
| LEROY CARTLEDGE, Respondent. | |

Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on April 16, 2015.[1]

The Respondent filed a return and motion for summary judgment on July 28, 2015. As the Petitioner is proceeding pro se, a Roseboro order was filed on July 29, 2015, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. Petitioner thereafter filed a response in opposition on September 9, 2015.

This matter is now before the Court for disposition.[2]

---

[1]Filing date under Houston v. Lack, 487 U.S. 266 (1988).

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.





## Procedural History

Petitioner was indicted in Oconee County in November 2009 for two counts of armed robbery [Indictment Nos. 09-GS-37-1279, 1282], two counts of possession of a weapon during the commission of a violent crime [Indictment Nos. 09-GS-37-1279, 1282], and one count of discharging a firearm into a dwelling [Indictment No. 09-GS-37-1280]. (R.pp. 399-402); see also Court Docket No. 19-3. Petitioner was represented by R. Daniel Day, a Public Defender for Oconee County. (R.pp. 1-273). After a jury trial on March 15-16, 2010, Petitioner was found guilty on both counts of armed robbery and both counts of possession of a weapon during the commission of a violent crime, while he was found not guilty on the charge of discharging a firearm into a dwelling. (R.p. 262). Petitioner was sentenced to twenty (20) years on each of the armed robbery convictions, to be served concurrently[3]. (R.p. 272).

Petitioner filed a timely direct appeal on which he was represented by Appellate Defender Robert M. Pachak. Pachak filed an Anders[4] brief requesting to be relieved as counsel and raising the following issue:

> Whether the trial court erred in refusing to charge the jury on how to receive an accomplice's testimony?

See Court Docket No. 19-5, p. 4.

---

[3]Petitioner was not sentenced separately on the two counts of possession of a weapon during the commission of a violent crime due to the mandatory minimum on the robbery counts. (R.pp. 265-266).

[4]Anders v. California, 386 U.S. 738 (1967). Anders requires that appointed counsel who seeks to withdraw because no nonfrivolous issues exist for review must submit a brief referencing anything in the record that arguably could support an appeal; a copy of that brief must be furnished to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct an independent and complete examination of the proceedings to determine if further review is merited. See Anders, 386 U.S. at 744.





On December 20, 2011, the South Carolina Court of Appeals filed an Order dismissing the appeal and granting counsel's petition to be relieved. State v. Jeffrey Webb, 2011-UP-566 (S.C.Ct.App. Dec. 20, 2011). See Court Docket No. 19-7. The Remittitur was sent to the Oconee County Clerk of Court on January 5, 2012. See Court Docket No. 19-8.

On July 12, 2012, Petitioner filed an application for post-conviction relief ("APCR") in state circuit court. See Webb v. State of South Carolina, No. 2012-CP-37-638. (R.pp. 274-281). Petitioner raised the following issues:

**Ground One:** Ineffective Assistance of Counsel.

**Ground Two:** Abuse of Discretion.

(R.p. 277).

Petitioner also filed an amendment addressing the issues of:

**Issue One:** "The Hand of One is the Hand of All" Instruction Improper

**Issue Two:** Burden Shifting.

(R.pp. 296-306).

Petitioner was represented in his APCR by Rodney Richey, Esquire, and an evidentiary hearing was held on Petitioner's application on May 6, 2013. (R.pp. 307-374). In an order dated July 23, 2013 (filed on August 2, 2013), the PCR judge denied relief on the APCR in its entirety. (R.pp. 385-396).

Petitioner filed a timely appeal of the PCR court's order. Petitioner was represented on appeal by Deputy Chief Appellate Defender Wanda H. Carter, and raised the following issues:

**Ground One:** The PCR judge erred in finding no ineffectiveness in trial counsel's failure to object to the trial judge's accomplice liability jury charge and the solicitor's accomplice liability closing argument where both offered the jury an impermissible alternate theory of liability that was unavailable in the case because the offenses charged against the Petitioner differed from the offenses charged against the "co-





> defendant," which was recognized by the PCR judge's acknowledgment that this was a **novel issue regarding an interpretation of "accomplice liability predicated upon actual charges brought by the state and not on the underlying facts presented at trial**."
>
> **Ground Two:** Trial counsel erred in failing to object to the solicitor's closing remark that highlighted Petitioner's failure to testify at trial because this deprived Petitioner of the right to a fair trial.

See Petition, p. 2 (Court Docket No. 19-11, p. 3)[Emphasis in Original].

On January 15, 2015, the South Carolina Supreme Court denied the petition. See Court Docket No. 19-13. The Remittitur was sent down on February 2, 2015. See Court Docket No. 19-14.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

> **Ground One:** Failure to object to the Trial Judge's improper jury instruction on accomplish (sic) liability.
>
> **Supporting Facts:** Petitioner asserts that he was the only person charged and convicted of two counts of armed robbery. The record reflects that four people (two males and two females) entered the residence in question on the date in question. Only the men were charged and convicted based on the events that occurred inside the residence. Petitioner was charged and convicted of two counts of armed robbery and his co-defendant was charged and convicted of two counts of strong arm robbery.
>
> **Ground Two:** Trial counsel failed to object to Solicitor's closing remark that highlighted Petitioner's failure to testify at trial.
>
> **Supporting Facts:** In the Solicitor's closing statement he stated "He did it and that there was no evidence to the contrary" App. 315 l. 16 - p. 316, l 18; App 338, lines 6-12. The solicitor referred the other testimony/evidence as uncontradicted when the defendant was the only one who could contradict that particular evidence.

See Petition [Court Docket No. 1], pp. 6, 8.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers





to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, for the reasons set forth hereinbelow, the undersigned finds that the Respondent is entitled to summary judgment in this case.

In Ground One, Petitioner contends that his trial counsel was ineffective for failing to object to the trial judge's instruction on accomplice liability, while in Ground Two, Petitioner contends that his counsel was ineffective for failing to object to the solicitor's remark that highlighted Petitioner's failure to testify at trial. Petitioner raised both of these issues in his APCR, where he had the burden of proving the allegations in his petition. See Webb v. State of South Carolina, No. 2012-CP-37-638. See also Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986). The PCR Court denied these claims, and the South Carolina Supreme Court also denied Petitioner's appeal of his APCR on these issues. See Court Docket No. 19-3. Therefore, these issues are properly exhausted for purposes of federal habeas review.

The PCR judge found that[5]: 1) Petitioner failed to meet his burden to prove trial

[5]The PCR judge made additional findings to those set forth hereinabove which are not relevant to the issues raised in Petitioner's federal habeas petition. Those findings are not discussed.





counsel was ineffective for not objecting to an alleged Doyle[6] violation during the solicitor's closing argument; 2) the solicitor's comment "there is no evidence to the contrary" was made in context of the solicitor's argument that the eyewitness and co-defendant testimony presented at trial denoted Petitioner as the causal connection to the victims and the scene of the offense; 3) the alleged Doyle violation was nothing more than the solicitor's specific argument confined to summarizing the eyewitness testimony; 4) furthermore, the alleged error did not constitute prejudice; 5) the alleged implicit Doyle violation occurred only once; 6) the solicitor distinguished his summary and version of the eyewitness and co-defendant testimony from Petitioner's exculpatory statement; 7) Petitioner's exculpatory statement was introduced at trial; 8) the solicitor's closing argument addressed the statement separate and apart from his summary of the eyewitness and co-defendant testimony; 9) Petitioner gave a statement that was inconsistent to testimony provided by the co-defendant, two eyewitnesses, the two victims, and Petitioner's girlfriend; 10) Petitioner's conviction was supported by overwhelming evidence of guilt; 11) numerous witnesses and the victims implicated Petitioner in the commission of the offense; 12) the trial judge gave thorough jury instructions regarding the matter prior and subsequent to the solicitor's closing argument; 13) any purported error on the matter would have constituted harmless error; 14) Petitioner failed to prove trial counsel was ineffective for not objecting to the trial judge's jury instructions on accomplice liability; 15) the facts of the case clearly supported the jury charge; and 16) Petitioner presented a novel restrictive interpretation of accomplice liability predicated upon the actual charges brought by the State and not on the underlying facts presented at trial. (R.pp. 392-394).

Substantial deference is to be given to the state court's findings of fact. Evans v.

[6]Doyle v. Ohio, 426 U.S. 610 (1976).





Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)). Nevertheless, since Petitioner's ineffective assistance of counsel claims were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 120 S.Ct. 1495 (2000). See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a





decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. As noted by the Supreme Court, the

> AEDPA's standard is intentionally " ' "difficult to meet." ' " White v. Woodall, 572 U.S. ___, 134 S.Ct. 1697, 1702 (2014) (quoting Metrish v. Lancaster, 569 U.S. ___, 133 S.Ct. 1781, 1786 (2013)). We have explained that " 'clearly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." White, 572 U.S., at ___, 134 S.Ct., at 1702 (some internal quotation marks omitted). "And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." Id., at ___, 134 S.Ct., at 1702 (same). To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86 (2011).
>
> Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a "presumption that state courts know and follow the law." Woodford v. Visciotti, 537 U.S. 19, 24(2002) (*per curiam*). When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, supra, at 102–103, 131 S.Ct. 770 (internal quotation marks omitted). This is especially true for claims of ineffective assistance of counsel, where AEDPA review must be " ' "doubly deferential" ' " in order to afford "both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. ___, 134 S.Ct. 10, 13 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, ___, 131 S.Ct. 1388, 1403 (2011)).

Woods v. Donald, 135 S.Ct. 1372, 1376 (2015).

Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland,





the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir. 1996). As discussed hereinbelow, infra, Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

**I.**

Looking at Petitioner's Ground Two claim first, the Supreme Court in Doyle held that an accused has a right to remain silent and the exercise of that right cannot be used against him. Doyle, 426 U.S. at 617. Specifically, the solicitor must not "comment directly or indirectly, upon the defendant's failure to testify at trial". State v. Cooper, 514 S.E.2d 584, 591 (S.C. 1999). A solicitor's closing argument should "stay within the record and its reasonable inferences." Id., at 591. In this case, the alleged Doyle violation occurred only once, during the Solicitor's closing argument when he was talking about the eyewitnesses. He said,

> Officer Arnold, being the good detective that he was, spent three or four days chasing these people around the county. They weren't easy for him to find. When he found them, they were all separated at different locations with different people. He talked to every single on of them, and like I say, every single one of them was fairly consistent in what they say happened. And the finger of every single one of them, it





> did not point at Shane Elliott, they all blamed him, too; but the big finger pointed right back at the defendant right there, Jeff Webb. He was the mastermind, he was the ringleader. I'm not excusing what Shane Elliott did, but he's the one that did it (pointing to Defendant). **And there was no evidence to the contrary.** They all saw it. Even though, like I say, some of them may have sketchy memories.

(R.p. 221)(Emphasis Added).

As the PCR judge pointed out, at this point in the solicitor's argument, he was referring to the testimony of the witnesses who testified at trial. See (R.pp. 220-221). As such, viewed in the context of the solicitor's argument, this statement is referring to there being no evidence from these witnesses to the contrary and that they all said Petitioner was the "ringleader", not to the Petitioner's silence at trial or failure to present any evidence. While, at the PCR hearing, Petitioner's counsel testified that he believed the solicitor's comment about not presenting any evidence was improper burden shifting and that he should have objected; (R.pp. 343-344); even assuming arguendo that this isolated comment *was* a Doyle violation, the error would be harmless in this case due to the overwhelming evidence of Petitioner's guilt.

The record reflects that Petitioner gave a statement, which was introduced at trial, in which he "[b]asically" said "he didn't do anything", and that was inconsistent with the testimony provided by his co-defendant, two eyewitnesses, the two victims, and Petitioner's girlfriend at the time, Laura Meadows. (R.pp. 186-189). Specifically, Maria Villegas testified that she, Nicole ("Nickie") Smith, Shane McCall, and Petitioner were all out drinking and went to Nathan McCall's house on the day in question. (R.pp. 122-123). Villegas testified that at some point Petitioner was in Nathan's bedroom and she guessed "had the gun on him" and "wanted his money". (R.p. 123). Nicole Smith testified that when the group entered Nathan's house, she heard a "Bap" and saw Petitioner hit Nathan in the head with a pistol. (R.p. 43). Smith also testified that Petitioner pointed





the pistol at Nathan and his brother, Jason, and demanded money. (R.pp. 43-44). Smith testified that Petitioner took Jason into the bedroom and that when Petitioner came out he had some money and another gun. (R.pp. 44, 47). Then, as they left the house, Petitioner fired shots into the home. (R.p. 44).

Nathan McCall testified that he woke up from a nap at his house and that Petitioner was walking through the door demanding money with a pistol out cocked and loaded. (R.p. 57). Nathan then testified that Petitioner hit him on the top of his head and took Nathan's pistol and demanded money. (R.pp. 57, 59). Nathan also testified that Shane fired a shot through his living room after Petitioner left the room with Jason, and that Shane watched him while Petitioner had Jason in the other room. (R.pp. 58-60, 67). Nathan further testified that Petitioner stole a semi-automatic gun from him. (R.pp. 64-65). Nathan testified that after the Petitioner left the house, a shot was fired into the house, but Nathan did not know who fired that shot. (R.pp. 68-60).

James ("Jason") McCall testified that he saw Petitioner standing over Nathan with a gun in his hand demanding money. (R.p. 89). Jason also testified that he heard Petitioner tell Nathan to give him his gun and that Petitioner then took it. (R.p. 89). Jason testified that Petitioner then held a gun on him and stole money and then, after Petitioner walked out of the house, that a shot was fired into the house. (R.pp. 90-91, 97). Jason also testified that he heard a shot fired when he and Petitioner were in the other room. (R.pp. 91-92).

Shane Elliott testified that he saw Petitioner hit Nathan in the head with a pistol. (R.p. 131). Elliott testified that Petitioner then took Nathan's gun, handed Elliot the gun that Petitioner had when they entered the house, and told Elliott to watch Nathan. (R.p. 131). Elliott also testified that he did not remember firing a shot in the house, but that it was possible that he did. (R.p. 131).





Finally, Laura Meadows, who was Petitioner's girlfriend at the time of the crime, testified that she saw Petitioner after the incident and that he and Shane had guns and were talking about some shootings going on and people owed money and he [Petitioner] was not going back to jail. (R.pp. 152-154).

In addition to this testimony, the undersigned also notes that prior to closing arguments, the trial court instructed the jury that:

> Madam Forelady, ladies and gentlemen of the jury, the [Petitioner] has a constitutional right to remain silent, to put up no evidence and require the State to meet its burden of proof beyond a reasonable doubt. The assertion of the constitutional right not to testify or present evidence must not, must not be considered by you in your deliberations. Under your oath you are to draw no conclusion whatsoever from the fact that the [Petitioner] in this case did not testify or put up evidence. As I stated, the [Petitioner] is not required to prove his innocence and the burden of proof remains upon the State to prove guilt beyond a reasonable doubt.
>
> Now, with that admonition, I now recognize the State for its closing argument.

(R.p. 215).

Then, after closing arguments, the trial judge charged the jury as follows:

> Now, I instruct you and emphasize that the fact that the [Petitioner] did not testify or put up evidence is not a factor to be considered by you in any way in your deliberations and in your consideration on the question of whether the State has proven the [Petitioner] is guilty or not guilty of the charges in the indictment. It must not be considered by you in any manner whatsoever. The [Petitioner] has a constitutional right to remain silent and the assertion of this right must not be considered by you in your deliberations.
>
> I repeat: Under your oath you are to draw no conclusion whatsoever from the fact the [Petitioner] in this case did not testify or present evidence. The fact that the [Petitioner] did not testify should not even be discussed in the jury room. The burden of proof, as I have stated to you, is on the State. The [Petitioner] is not required to prove his innocence. The burden of proof remains on the State to prove guilt beyond a reasonable doubt.

(R.pp. 249-250).





Based on this record and testimony, the PCR judge concluded that even if a Doyle violation had been committed, any such violation was harmless based on the overwhelming evidence of Petitioner's guilt presented at trial. The undersigned can discern no reversible error in this finding. Truesdale v. Moore, 142 F.3d 749, 756-757 (4th Cir. 1998)[Finding that even assuming arguendo a remark constituted a Doyle violation, any alleged Doyle error was harmless where there was only a single reference and the record contained ample evidence of defendant's guilt]; see also Brecht v. Abrahamson, 507 U.S. 619, 626-639 (1993)[finding alleged Doyle violation harmless]; Pellum v. McKie, No. 12-2468, 2013 WL 5141494 at ** 2, 12 (D.S.C. Sept. 12, 2013)[Court found no Doyle violation, but also found that even assuming a violation did occur, the single reference would be harmless]. Therefore, this claim is without merit and should be dismissed.

**II.**

With regard to Petitioner's first asserted Ground for relief concerning the jury charge on accomplice liability; see (R.pp. 247-248); Petitioner testified at his PCR hearing that his co-defendant McCall was charged with strong arm robbery, and that although Petitioner's original charge was also strong arm robbery, he was indicted for armed robbery shortly before his trial. (R.pp. 312-313). Petitioner asserted that since he and his co-defendant were charged on different charges, the "hand of one is the hand of all" theory of culpability should not apply to this case and that charge should therefore not have been given to the jury. (R.pp. 313-314). However, that distinction does not alone entitle Petitioner to relief, as "[o]ne who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design or purpose." State v. Langley, 515 S.E.2d 98, 101 (S.C. 1999). See also State v. Hendon, No. 07-080, 2007 WL 8325960 at * 2 (S.C.Ct.App. Feb. 14, 2007)["Although it is troubling that the





accomplice liability charge was given when Jones (who was the witness whose conduct resulted in the charge being given) was not charged in this crime, this fact does not control our analysis of whether there was evidence to support the accomplice liability charge. Because there was circumstantial evidence to support the charge, we find no error with the trial court's decision to give the charge."].

In this case, the evidence presented at trial was that both Petitioner and his co-defendant had guns during the commission of a robbery which were used to hit and threaten the victims. See discussion, supra. In addition, the evidence showed that shots were fired in the house during the commission of the robbery as well as after the robbery as the Petitioner and co-defendant were leaving. Id. Therefore, Petitioner has not shown that it was reversible error for the accomplice liability charge to be given simply because his co-defendant had not been charged with the same offense. Cf. State v. Dodd, No. 14-151, 2014 WL 2589482 at * 1 (S.C.Ct.App. Apr. 2, 2014)[Affirming Defendant's conviction where one of the grounds challenging the conviction was "whether the trial court erred in charging the jury on the 'hand of one is the hand of all' because the State failed to charge (Defendant's) alleged co-defendant."].

Additionally, as has previously been noted, even assuming arguendo that it was error for the trial judge to have given the accomplice liability charge, any error was harmless because of the overwhelming evidence in the record to support the Petitioner's guilty verdict. See discussion, supra; see also State v. Hendon, No. 07-80, 2007 WL 8325960 at ** 2-3 (S.C.Ct.App. Feb. 14, 2007)[Finding that even assuming it was error to give accomplice liability charge, the error would be harmless because there was competent evidence to support the guilty verdict]. In any event, the undersigned is also constrained to note that whether the jury charge was appropriate is a matter of





state law, and it is not the province of a federal habeas corpus court to reexamine state court determinations of state law questions absent the presentation of an underlying federal claim for relief. Estelle v. McGuire, 502 U.S. 62, 67 (1991)["federal habeas corpus relief does not lie for errors of state law"]; see also Washington v. Rushton, No. 05-2394, 2006 WL 2050582 at * 1 (D.S.C. July 13, 2006)["[T]he question of whether a jury charge is given was adequate or appropriate is a state law issue to be resolved by the state court."]

Therefore, Petitioner has not shown that the findings and rulings of the state courts were unreasonable, or that his counsel was ineffective. Evans, 220 F.3d at 312; Williams v. Taylor, supra; Strickland v. Washington, supra.; Greene v. Fisher, 132 S.Ct. 38, 43 (2011)[observing that AEDPA's "standard of 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law' is difficult to meet, because [its purpose] is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems', and not as a means of error correction"]. This claim should be dismissed.

**Conclusion**

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

September 28, 2015
Charleston, South Carolina





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

